UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| Manar Haitham Yared, | ) | CASE NO. 1:24 CV 2114 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Rohit Nepal, et al., | ) | |
| | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the Court upon defendant Rohit Nepal, Deputy Chief of Mission, U.S. Embassy in Jordan and defendant Marco Rubio, Secretary of the United States Department of State's Motion to Dismiss. (Doc. 8.) This is a writ of mandamus case. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.

## FACTS

In September 2022, plaintiff Manar Haitham Yared ("Yared") filed a visa petition with the United States Citizenship and Immigration Service ("USCIS") on behalf of her fiancé, Alaa Dib ("Dib"). USCIS approved the petition in September 2023 and Dib appeared for an interview at the U.S. Embassy in Jordan on July 23, 2024. On that date, the consular officer refused Dib's visa application under the Immigration and Nationality Act ("INA") § 221(g), 8 U.S.C. § 1201(g) and

placed Dib's visa application in "administrative processing." Dib then submitted Form DS-5535 Supplemental Questions on July 30, 2024. Since Dib's interview, neither he nor Yared have received any additional information about his refused visa.

While the parties seem to agree on these foregoing facts, they disagree as to whether Defendants' "refusal" on July 23, 2024, was a "final" adjudication of Dib's visa application under the applicable laws. Accordingly, on December 6, 2024, Yared filed this action, asking this Court to compel defendant Rohit Nepal, Deputy Chief of Mission, U.S. Embassy in Jordan and defendant Marco Rubio, Secretary of the United States Department of State (together, "Defendants") to perform their nondiscretionary duty to render a final decision on Dib's visa application. Defendants now move to dismiss Yared's Petition for Writ and Complaint for Injunctive Relief, alleging this Court lacks subject matter jurisdiction or, in the alternative, Yared fails to state a claim. Yared opposes the motion.

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. "Federal courts are courts of limited jurisdiction" and, "[u]nlike state trial courts, they do not have general jurisdiction to review questions of federal and state law." *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, their authority is limited to deciding "cases that the Constitution and Congress have empowered them to resolve." *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 884–85 (N.D. Ohio 2010). By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.* A challenge to subject matter jurisdiction may be considered a factual attack when the attack relies on extrinsic evidence, as opposed to the pleadings alone, to contest the truth of the allegations. *Id.*

And when considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 335 F. App'x 587, 588 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). That said, the complaint must set forth "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The Court is not required to accept as true legal conclusions or unwarranted factual inferences. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the

allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint that merely offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*

**ANALYSIS**

"As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). Accordingly, before this Court can assess whether Yared has sufficiently plead any claim for relief, it must first determine whether it possesses subject matter jurisdiction over Yared's claims under (1) the Administrative Procedure Act, (2) the Mandamus Act, and (3) the Fifth Amendment. *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) ("[C]ourts must decide jurisdictional issues before merits issues.").

1. **Mandamus Act and Administrative Procedure Act Claims**

District courts possess jurisdiction to compel agency action only in the "extraordinary" case when they find the agency violated "a clear and indisputable" duty to act. *In re Parker*, 49 F.3d 204, 206 (6th Cir. 1995). Courts may remedy such violations by issuing a writ of mandamus. *See* 28 U.S.C. § 1361. Alternatively, courts can order relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), which authorizes orders to "compel agency action unlawfully withheld or unreasonably delayed[.]"Those two paths to compulsory relief share a common threshold: The court may act "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted); *see also Huron Mountain Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x 390, 393 (6th Cir. 2013)

4

("When a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." (quoting *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004))). 1

Relevant here, under 8 U.S.C. § 1184(d), a nonimmigrant visa may be issued to the noncitizen fiancé(e) of a U.S. citizen (K-1 nonimmigrant visa), which would allow the noncitizen fiancé(e) to travel to the United States to enter a marriage with the U.S. citizen. *See* 8 U.S.C. §§ 1101(a)(15)(K), 1184(d); 8 C.F.R. § 214.2(k). First, the U.S. citizen fiancé(e) must file a Form I-129F, Petition for Alien Fiancé(e) (visa petition), with USCIS on behalf of the noncitizen fiancé(e) in order to demonstrate the relationship is bona fide and the intent to marry. 8 U.S.C. § 1184(d); 8 C.F.R. § 214(k). If the USCIS approves the visa petition, it forwards the petition to the Department of State's National Visa Center, which creates a visa case for the noncitizen that it forwards to a U.S. embassy or consulate. *See* Dep't of State Bureau of Consular Affairs, Nonimmigrant Visa for a Fianc(é)e (K-1).

The noncitizen fiancé(e) must appear before a consular officer and make and execute a nonimmigrant visa application. 8 U.S.C. § 1202(h); 22 C.F.R. §§ 40.1(l), 41.103. Importantly, the visa applicant bears the burden of establishing eligibility for a visa to the satisfaction of the consular officer. *See* 8 U.S.C. § 1361; *see* 22 C.F.R. § 41.81(a), (d) (discussing K-1 applicants). "When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations," the consular officer must do one of three things:

---

[1] As the Supreme Court has noted, "the APA carrie[s] forward the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs—principally writs of mandamus[.]" *Norton*, 542 U.S. at 63.

      1. issue the visa,

      2. refuse the visa, or,

      3. discontinue granting the visa, pursuant to an outstanding order under INA 243(d).

22 C.F.R. § 41.121(a).

      Here, Defendants' consular officer refused Dib's visa on July 23, 2024. Despite acknowledging this refusal (Doc. 9, at 8 (citing Doc. 1 ¶ 20)), Yared contends that placing the refused visa in "administrative processing," and signaling that supplemental action may be taken, somehow requires Defendants to act further. The issue, however, is that Yared cannot point to any law or regulation that requires the Defendants to take any discrete, further action.

      Defendants contend that they discharged the only applicable required agency action when the consular officer refused Dib's visa. (Doc. 8-1, at 19 (citing 22 C.F.R. § 41.121(a)).) *See, e.g.*, *Omar v. Blinken*, 2024 WL 4803847, at *8 (S.D. Ohio Nov. 15, 2024) ("A plain reading of § 42.81(a) and § 41.121(a) indicates that the refusal that occurred here, a refusal under INA 221(g), is all that the regulations require."). Yared does not seem to dispute this because she does not point to 22 C.F.R. § 41.121(a) as the basis for her claim that Defendants have failed to take some discrete, non-discretionary action.

      Rather, Yared contends that, together, 5 U.S.C. § 555(b) of the APA and 8 U.S.C. § 1202(d) of the INA confer on Defendants a discrete, non-discretionary duty to "review and adjudicate visa applications through conclusion and within a reasonable time." (Doc. 9, at 12; *see also* Doc. 1 ¶ 9.) Section 1202(d) provides that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer," while Section 555(b) of the APA provides in general that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a

6

reasonable time, each agency shall proceed to conclude a matter presented to it." Yared's contention hinges on her belief that placing a refused visa in "administrative processing" does not "conclude [the] matter" and requires Defendants to take some further adjudicative action.

To support her belief, Yared relies on language not from any statute or regulation, but from the notice of refusal that Defendants sent to Dibs.[2] She then cites several district courts that relied on the same, or similar, language, in finding a refused visa placed in administrative processing had not been adjudicated through conclusion.[3] *See, e.g.*, *Ebrahimi v. Blinken*, 732 F. Supp. 3d 894, 904 (N.D. Ill. May 3, 2024) ("[T]he court must consider the State Department's particular promise to [plaintiff's father] that he 'will' receive another adjudication when administrative processing concludes. As other

---

[2] Defendants' notice of refusal to Dibs provided in relevant part that "[a] U.S. consular officer has adjudicated and refused your visa application. . . . If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete." (Doc. 9-3.)

[3] The Court recognizes that the issue before it is an unsettled one, leaving courts across the country split as to the outcome. Several courts have concluded that a refused visa placed in administrative processing has not been adjudicated through conclusion, as required. *E.g.*, *Awal v. U.S. Dep't of State*, 2024 WL 4979661, at *8–9 (D. Minn. Dec. 4, 2024) (collecting cases). While several other courts have concluded that refusing a visa discharges the only discrete agency action required by the applicable laws. *E.g.*, *Karimova v. Abate*, 2024 WL 3517852, at *4 (D.C. Cir. July 24, 2024) (per curiam); *Pegah v. Blinken*, 2025 WL 6293434, at *3–4 (S.D. Tex. Feb. 4, 2025) (surveying cases).

Considering the cases cited by the parties in light of the established principal that "the only agency action that can be compelled under the APA is action legally required," *Norton*, 542 U.S. at 64, this Court aligns itself more with the reasoning of *Karimova* and others in finding that no further action is legally required by Defendants after they have refused a visa. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) ("[The APA] does not give [a court] license to 'compel agency action' whenever the agency is withholding or delaying an action [the court] think[s] it should take." (citing *Norton*)).

courts have noted, the State Department's 'use of "will"' in this communication 'all but guarantees [the applicant] another adjudication once administrative processing is complete.'" (citing cases)).

This language, however, is irrelevant to the relief Yared seeks before this Court. When a plaintiff seeks relief through the Mandamus Act and/or the APA, the Court's authority is confined to compelling only discrete, legally required agency actions. *See, e.g.*, *Norton*, 542 U.S. at 64; *see also Pegah*, 2025 WL 629343, at *4 ("The possibility of reconsideration during further administrative processing is immaterial, when no statute, regulation, or other source imposes a duty to reconsider it."). Here, Yared asks this Court to compel Defendants to further adjudicate her fiancé's refused visa application, but she points to no statute or regulation that requires that further adjudication. Besides 22 C.F.R. § 41.121(a), she does not point to any statute or regulation that defines any discrete action that Defendants must take to adjudicate her fiancé's visa. She has not pointed to any statute or regulation that requires any action concerning a visa in "administrative processing." In fact, she has not pointed to any law or regulation that concerns visas in "administrative processing" at all.

To that point, under the applicable laws, if a visa applicant fails to meet their burden of establishing eligibility for a visa, their application is refused. 8 U.S.C. § 1361; *id.* § 1201(g). Refusal is one of only three options available to Defendants under the applicable laws and regulations. 22 C.F.R. § 41.121(a). There is no mention in any statute or regulation of an "initial" refusal. Nor is there any mention of "temporarily" refusing a visa while seeking supplemental evidence through administrative processing.[4] Rather, Defendants represent that placing officially refused visas in

---

[4] Section 41.121 goes on to state that if a consular officer "refuses the issuance of a visa, he or she must inform the alien of the ground(s) of ineligibility (unless disclosure is barred under INA 212(b)(2) or (3)) and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal." *Id.* § 41.121(b). The consular officer must also "note the reason for the

8

"administrative processing" is a discretionary process that serves to benefit refused visa applicants who may have their refused applications *sua sponte* reconsidered without having to refile a new application if supplemental evidence provides such a basis. (Doc. 10, at 2 (citing among authority *Karimova*, 2024 WL 3517852, at *2 ("As a result [of the applicant failing to carry her burden of showing visa eligibility], the consular officer may choose to place an officially refused application in administrative processing. . . . If the consular officer gets enough new information [to overcome ineligibility], sometimes from sources other than the applicant, the officer can determine *sua sponte* that the administrative processing is 'completed' and may then re-open and re-adjudicate the applicant's case.").) Yared has not pointed to any facts or authority that suggests Defendants are misrepresenting the "administrative processing" of K-1 nonimmigrant visas.[5]

---

refusal on the application." *Id.* Yared does not allege that Defendants failed to inform Dib's of the grounds of his ineligibility.

Section 41.121 further provides that "[n]onimmigrant refusals must be reviewed . . . by consular supervisors, or a designated alternate, to ensure compliance with laws and procedures" *Id.* § 41.121(c). "If the ground(s) of ineligibility upon which the visa was refused cannot be overcome by the presentation of additional evidence, the refusal must be reviewed without delay; that is, on the day of the refusal or as soon as it is administratively possible." However, "[i]f the ground(s) of ineligibility may be overcome by the presentation of additional evidence, and the applicant has indicated the intention to submit such evidence, a review of the refusal may be deferred for not more than 120 days." *Id.* Again, Yared does not cite this section as the basis of any action Defendants have allegedly failed to take.

[5] Yared alleges that "[a] 'refusal' under INA § 221(g) places an application into a status called 'administrative processing' . . . a temporary measure, signaling that processing is ongoing while allowing [Defendants] to gather additional information." (Doc. 1 ¶ 21.) Yared relies on *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268, 275–84 (D.D.C. 2016), for the proposition that "a § 221(g) 'refusal' is not a final decision for the purpose of determining jurisdiction to review under the APA." (*Id.*; Doc. 9, at 8.) That case, however, is distinguishable. It concerned Iraqi and Afghan Special Immigrant Visa ("SIV") programs, which involved fourteen enumerated "steps" before issuance. One such "step" required that "[t]he applicant's case undergoes administrative processing." 168 F. Supp. 3d at 284. After completion of the administrative processing, the visa was issued if the applicant was eligible.

9

The relief Yared seeks before this Court is "a drastic and extraordinary remedy" limited to compelling "discrete agency action" that the agency "is required to take." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)); *Norton*, 542 U.S. at 64. "The limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *Norton*, 542 U.S. at 65 ("Thus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be."). Accordingly, here, because there is no law requiring Defendants to take some further discrete, non-discretionary action concerning Dib's refused visa, this Court lacks jurisdiction over Yared's claims under both the Mandamus Act and APA.[6] *See Karimova*, 2024 WL 3517852 at *4 ("Nothing in federal law speaks to the ability of a consul, after [refusing a visa application], to hold onto the application in case circumstances later change in the applicant's

---

*Id.* The Court found that because the SIV programs unequivocally required "administrative processing" before the issuance of a SIV, applications held in administrative processing had not yet received any final decision. *Id.* at 285–87 ("Defendants' formal representations to Congress in their Joint Reports are simply incompatible with the notion that SIV applicants in general, and Plaintiffs in particular, have already received final decisions on their applications by the time they reach the 'administrative processing' stage. . . . Pursuant to the 14-step process described above, no SIV applicant could possibly receive a visa before "administrative processing[.]"). Yared does not point to any similar unequivocal requirement that K-1 nonimmigrant visas must undergo some "administrative processing" before they can be issued.

[6] To the extent Yared believes that Defendants have exceeded their agency authority by placing officially refused visas in administrative processing to potentially issue later, that is a different question concerning the scope of agency action that is not before this Court. (*See* Doc. 9, at 17 (arguing that adjudication of a visa "should not be supplemented by placement of the application into administrative processing for an indeterminate period of time")). Similarly, this Court is not presently tasked with defining what it means to adjudicate a nonimmigrant visa through conclusion. (*See id.* at 19 (citing *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024))).

favor[.]") *see also Hussein v. Beecroft*, 782 F. App'x 437, 442–43 (6th Cir. 2019) ("[G]iven that defendants fully discharged their duties under the law, there was simply nothing else the district court could order defendants to do . . . .").

For the aforementioned reasons, this Court lacks subject matter jurisdiction over Yared's Mandamus Act and APA claims.[7] Accordingly, these claims must be dismissed and Defendants' Motion to Dismiss is granted as to Counts One and Two.

---

[7] Even if this Court did have jurisdiction to compel some further action by Defendants to further adjudicate Dib's visa, Yared's Mandamus Act and APA claims would still be dismissed. First, Yared's mandamus relief is duplicative of her APA claim. "Where mandamus relief is duplicative of an APA claim, it must be dismissed." *Ebrahimi*, 732 F. Supp. 3d at 908 (quoting *Kaur v. Mayorkas*, 2023 WL 4899083, at *13 (S.D.N.Y. Aug. 1, 2023)). Second, Yared has failed to allege that any delay in further adjudicating Dib's visa application has been unreasonable as a matter of law. While there may be instances in which assessing an alleged unreasonable delay in agency action is inappropriate on a motion to dismiss, no authority prevents a court from dismissing a claim that, as here, clearly lacks sufficient allegations suggesting an unreasonable delay. *See Gonzalez v. Offut*, 2024 WL 2847962, at *5 (S.D. Ohio June 5, 2024) ("[C]ourts within this circuit have routinely considered [whether a plaintiff has alleged an unreasonable delay] at the motion-to-dismiss stage when the pleadings provide enough information to analyze the relevant factors.") (collecting cases). Relying on the "*TRAC* factors" cited by both parties, Yared has not plausibly alleged unreasonable delay in the further adjudication of Dib's visa application. This is perhaps unsurprising considering she has alleged less than a nine-month delay between Dib's interview and present day—well short of what case law typically considers to be an unreasonable delay. *Ebrahimi*, 732 F. Supp. 3d at 911 ("[C]ase law 'typically considers "the two-year mark" to be "the lowest threshold for a finding of unreasonable delay" in visa processing cases.'" (citations omitted)); *Brzezinski v. U.S. Dep't of Homeland Sec.*, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021) (surveying case law, finding "no case that found an unreasonable delay when the delay was under two years"); *Khazaei v. Blinken*, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023 ("Absent a shorter statutory timeline, a delay of less than a year is not unreasonable.").

Defendants further contend, alternatively, that the doctrine of consular nonreviewability bars judicial review of the Defendants' refusal of Dib's visa. Because this Court finds that it lacks subject matter jurisdiction over Yared's Mandamus Act and APA claims, and, in any event, Yared failed to allege any unreasonable delay, it does not reach this further alternative ground for dismissal.

11

### 2. Fifth Amendment – Due Process Claim

For a federal court to have jurisdiction a plaintiff must have, at a minimum, constitutional standing to bring the suit. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). This constitutional standing has three elements—a plaintiff must (1) have suffered an injury in fact, (2) demonstrate causation, and (3) prove a likelihood that a favorable decision by the court could redress the plaintiff's injury. *Miller v. City of Wickliffe*, 852 F.3d 497, 502–03 (6th Cir. 2017). To establish an injury, "plaintiffs must allege the 'invasion of a legally protected interest.'" *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 485 (6th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 300, 339 (2016)).

Here, Yared lacks standing to seek relief under the Fifth Amendment because she fails to allege any invasion of a legally protected interest. Yared alleges that Defendants' failure to further adjudicate Dib's visa deprives her, a U.S. citizen, of her Fifth Amendment Due Process Rights to family relationships because it has kept her apart from her chosen fiancé. (Doc. 9, at 26.) The Supreme Court has held, however, that a U.S. citizen has no constitutionally protected interest to have their foreign citizen family members live in the United States. *Dep't of State v. Muñoz*, 602 U.S. 899, 916–17 (2024) ("While 'families of putative immigrants certainly have an interest in their admission,' it is a 'fallacy' to leap from that premise to the conclusion that United States citizens have a "'fundamental right'" that can limit how Congress exercises 'the Nation's sovereign power to admit or exclude foreigners.'" (quoting *Fiallo v. Bell*, 430 U.S. 787, 795 n.6 (1977)); *see also, e.g.*, *Baaghil v. Miller*, 1 F.4th at 427, 433 (6th Cir. 2021) ("As to Ahmed, the question is whether the visa denials violated his constitutional rights. They did not. American residents—whether citizens or legal residents—do not have a constitutional right to require the National Government to admit noncitizen

family members into the country."); *Omar*, 2024 WL 4803847, at *4 ("[Plaintiff] has no constitutionally protected liberty interest in her spouse being admitted to the country."). Because Yared has not identified a legally protected interest sufficient to support a due process claim, this claim must be dismissed.

**CONCLUSION**

For all the aforementioned reasons, Defendants' Motion to Dismiss is granted and this case is dismissed.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/9/25